ACCEPTED
15-25-00067-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 11:50 AM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00067-CV

_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 1:59:23 PM
CHRISTOPHER A. PRINE
Clerk

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

_____

THE STATE OF TEXAS
EX REL. JOSHUA LAFOUNTAIN,

V.

BLT MANAGEMENT COMPANY, LLC N/K/A
BLT SUPPORT SERVICES, LLC; *et al.*

_____

BRIEF OF APPELLEES

_____

| | |
|---|---|
| Jane Webre<br>jwebre@scottdoug.com<br>State Bar No. 21050060<br>SCOTT DOUGLASS &<br>  MCCONNICO LLP<br>303 Colorado Street, Suite 2400<br>Austin, TX  78701-3234<br>Phone: (512) 495-6300<br><br>Craig Cherry<br>ccherry@cjsjlaw.com<br>CHERRY JOHNSON SIEGMUND<br>  JAMES, P.C.<br>7901 Fish Pond Rd., Second Floor<br>Waco, Texas 76710<br>Phone: (254) 732-2242 | Christopher S. Ayres<br>csayres@ayreslawoffice.com<br>R. Jack Ayres, Jr.<br>rjayres@ayreslawoffice.com<br>AYRES LAW OFFICE, P.C.<br>8140 Walnut Hill Lane, Suite 105<br>Dallas, Texas 75231<br>Phone: (972) 991-2222<br><br>Chris Davis<br>cdavis@grayreed.com<br>GRAY REED<br>1601 Elm Street, Suite 4600<br>Dallas, TX 75201<br>Phone: (214) 954-4135 |

COUNSEL FOR APPELLEES

ORAL ARGUMENT REQUESTED

4903-6921-7390

## IDENTITY OF PARTIES AND COUNSEL

<u>Appellant:</u>
State of Texas ex rel. Joshua LaFountain

<u>Counsel for Appellant</u>
James "Rusty" Tucker
rusty@rustytuckerlaw.com
Law Offices of James R. Tucker, P.C.
3100 Drexel Drive
Dallas, TX 75205
Phone: 214-505-0097

<u>Appellees:</u>
BLT Management Company, LLC N/K/A BLT Support Services, LLC; BLT Dental Management Company, LLC N/K/A BLT Support Services, LLC; BLT Support Services, LLC; Buckner Marketplace Dental, LLC, D/B/A Bear Creek Family Dentistry; Pioneer Dental, PA D/B/A Bear Creek Family Dentistry; Westcliff Dental, PA, D/B/A Bear Creek Family Dentistry; Pecan Plaza Dental, PA D/B/A Bear Creek Family Dentistry; Spring Valley Dental, PA D/B/A Bear Creek Family Dentistry; Plaza De Oro Dental, PA D/B/A Bear Creek Family Dentistry; Robert E. Tafel DDS, PA D/B/A Bear Creek Family Dentistry; Robert E. Tafel, D.D.S. P.C.; and Robert B. Tafel.

<u>Counsel for Appellees:</u>
Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701-3234
Phone: (512) 495-6300

Craig Cherry
ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Rd., Second Floor
Waco, Texas 76710
Phone: (254) 732-2242

4903-6921-7390

Christopher S. Ayres
csayres@ayreslawoffice.com
R. Jack Ayres, Jr.
rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Phone: (972) 991-2222

Chris Davis
cdavis@grayreed.com
GRAY REED
1601 Elm Street, Suite 4600
Dallas, TX 75201
Phone: (214) 954-4135

4903-6921-7390

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT OF THE CASE...................................................................... ix

ISSUES ON APPEAL ............................................................................x

RECORD AND APPENDIX ...................................................................... xi

INTRODUCTION .................................................................................1

STATEMENT OF FACTS .........................................................................2

    A.    LaFountain files suit in 2012 but does nothing until 2024. .................2

    B.    Bear Creek produces substantial amounts of hard copy and electronic files. ..........................................................................4

    C.    LaFountain's expert designations are a day late and a dollar short. ..................................................................................8

    D.    The first hearing on pretrial matters....................................11

    E.    The no-evidence summary judgment. ...................................13

SUMMARY OF THE ARGUMENT ...............................................................17

ARGUMENT .....................................................................................18

    A.    The trial court did not abuse her discretion in striking LaFountain's experts. .......................................................18

        1.    The standard of review is deferential to the trial court's determination. ........................................................18

        2.    It was not an abuse of discretion to strike Dr. Olson...............19

            a.    The expert designation was not timely and did not disclose Dr. Olson's expert opinions.............................19

            b.    Dr. Olson's opinions were properly excluded on their merits. ...............................................................23

iv

3.  It was not an abuse of discretion to strike Reaves. ....................25

    a.  The designation was untimely and insufficient. .............25

    b.  Reaves' opinions were properly excluded on their merits. ..........................................................................26

B.  The trial court did not abuse her discretion in denying LaFountain's motion to compel production of additional documents. .....................................................................................29

C.  It was not an abuse of discretion to deny LaFountain's motion to amend the Agreed Scheduling Order. ................................................33

D.  Summary judgment was proper because, after twelve years, LaFountain had no evidence to support his TMFPA claims. ...............34

1.  The trial court sustained Bear Creek's objections to LaFountain's only summary judgment evidence, and he has waived any error regarding that ruling. ..............................34

2.  No-evidence summary judgment was proper. .........................37

    a.  There is no evidence that Bear Creek committed "unlawful acts" in violation of the TMFPA. .................37

    b.  There is no evidence of damages. ...................................38

PRAYER ....................................................................................................41

CERTIFICATE OF COMPLIANCE .....................................................42

CERTIFICATE OF SERVICE ...............................................................42

v

4903-6921-7390

# TABLE OF AUTHORITIES

**Cases**

*Bertucci v. Watkins*,
    709 S.W.3d 534 (Tex. 2025) ...................................................................36

*Broders v. Heise*,
    924 S.W.2d 148 (Tex. 1996) ...................................................................23

*Cooper Tire & Rubber Co. v. Mendez*,
    204 S.W.3d 797 (Tex. 2006) ............................................................. 23, 24

*E.I. du Pont de Nemours & Co., Inc. v. Robinson*,
    923 S.W.2d 549 (Tex. 1995) .......................................................... 24, 25, 27

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
    318 S.W.3d 867 (Tex. 2010) ...................................................................36

*Fleming v. Wilson*,
    610 S.W.3d 18 (Tex. 2020) .....................................................................18

*Ford Motor Co. v. Ledesma*,
    242 S.W.3d 32 (Tex. 2007) .....................................................................27

*Fort Brown Villas III Condo. Ass'n v. Gillenwater*,
    285 S.W.3d 879 (Tex. 2009) ...................................................................18

*Fults v. Standley*,
    No. 09-22-00126-CV, 2025 WL 2164868
    (Tex. App.—Beaumont July 31, 2025, pet. filed) ........................... 21, 22, 26

*Garrett v. Brinkley*,
    No. 03-14-00431-CV, 2016 WL 240896 (Tex. App.—Austin
    Jan. 15, 2016, no pet.)..............................................................................18

*Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*,
    443 S.W.3d 820 (Tex. 2014) ...................................................................24

*Lujan v. Navistar, Inc.*,
    555 S.W.3d 79 (Tex. 2018) .....................................................................16

4903-6921-7390

*Merrell Dow Pharm., Inc. v. Havner*,
    953 S.W.2d 706 (Tex. 1997) ........................................................24

*Miller v. Kennedy & Minshew*,
    142 S.W.3d 325 (Tex. App.—Fort Worth 2003, pet. denied)........................22

*Paxton v. Tex. Dep't of State Health Servs.*,
    500 S.W.3d 702 (Tex. App.—Austin 2016, no pet.)....................................30

*Pilgrim's Pride Corp. v. Smoak*,
    134 S.W.3d 880 (Tex. App.—Texarkana 2004, pet. denied)......................18

*Pjetrovic v. Home Depot*,
    411 S.W.3d 639 (Tex. App.—Texarkana 2013, no pet.) ............................18

*Ross v. St. Luke's Episcopal Hosp.*,
    462 S.W.3d 496 (Tex. 2015) ........................................................36

*Sw. Energy Prod. Co. v. Berry-Helfand*,
    491 S.W.3d 699 (Tex. 2016) ........................................................28

*Wal-Mart Stores, Inc. v. Merrell*,
    313 S.W.3d 837 (Tex. 2010) ........................................................29

**Statutes**

Tex. Gov't. Code § 531.1021(g)........................................................30

Tex. Hum. Res. Code §§ 36.001 et seq........................................................ ix

Tex. Hum. Res. Code § 36.002(1)-(13) ........................................................2

Tex. Hum. Res. Code § 36.002(1) ........................................................37

Tex. Hum. Res. Code § 36.002(2) ........................................................37

Tex. Hum. Res. Code § 36.002(3) ........................................................37

Tex. R. App. P. 38.1(i)........................................................36

Tex. R. Civ. P. 193.6(a) ........................................................ 18, 25

Tex. R. Civ. P. 193.6(b)........................................................18

4903-6921-7390

Tex. R. Civ. P. 194.2 ...................................................................................... 8

Tex. R. Civ. P. 195.5 ...................................................................................... 8

Tex. R. Civ. P. 195.5(a)(3) ............................................................................. 8

Tex. R. Civ. P. 195.5(a)(4)(A) ...................................................................... 10

Tex. R. Civ. P. 196.3(c) ......................................................................... 4, 33

Tex. R. Evid. 702 ......................................................................................... 23

Tex. R. Evid. 705(c) .................................................................................... 24

4903-6921-7390

<span style="text-align:center">STATEMENT OF THE CASE</span>

*Nature of the Case*:   This is a *qui tam* action filed under the Texas Medicaid Fraud Prevention Act (the "TMFPA"), Tex. Hum. Res. Code §§36.001 *et seq*. Appellees BLT Management Company, LLC, *et al*. (together, "Bear Creek") are a group of affiliated dental clinics. In 2012, Appellant Joshua LaFountain filed this *qui tam* suit against Bear Creek alleging violations of the TMFPA. Supp.CR.3 (Original Petition); CR4-61 (Fourth Amended Petition).

*Trial Court:*   126th District Court of Travis County. Of the orders at issue in this appeal, Hon. Daniella Deseta Lyttle rendered the orders striking LaFountain's experts and denying LaFountain's motions to compel and to amend the scheduling order. Hon. Jessica Mangrum rendered the final no-evidence summary judgment.

*Course of Proceedings*:   The case was filed in 2012 under seal but was unsealed in 2017 after the State declined to intervene. Supp.CR4-6. In January 2024 the court signed an Agreed Scheduling Order that set pretrial deadlines and a trial date in April 2025, which was more than thirteen years after suit was filed. App.7. Bear Creek moved to strike LaFountain's two experts on various grounds, including that the designation was filed weeks after the deadline in the Agreed Scheduling Order. CR62-198. LaFountain moved to compel production of additional documents and to amend the scheduling order. CR199-253. The court held a hearing on all of the motions (2RR) and rendered orders striking both experts and denying the motions to compel and to amend the scheduling order. App.1-4.

Bear Creek moved for no-evidence summary judgment as to many elements of the TMFPA claims. CR530-570. The court held another hearing (3RR) and rendered an order sustaining Bear Creek's objections to LaFountain's summary judgment evidence and granting a final summary judgment. App.5.

<span style="text-align:center">ix</span>

## ISSUES ON APPEAL

1.      The trial court did not abuse her discretion in striking LaFountain's two expert witnesses because, among other deficiencies, their designations were untimely and inadequate.

2.      The trial court did not abuse her discretion in denying LaFountain's eleventh-hour motion to compel production of additional documents because LaFountain failed to meet his burden to identify any documents he requested that Bear Creek had not produced.

3.      The trial court did not abuse her discretion in declining to amend the Agreed Scheduling Order where the case had been on file for thirteen years and LaFountain failed to demonstrate any measure of diligence in conducting discovery and preparing the case for trial.

4.      The no-evidence summary judgment was proper where LaFountain lacked any evidence of the essential elements of the TMFPA claims. Summary judgment was proper whether or not the experts were stricken.

5.      LaFountain waived any error in the trial court's order sustaining objections to his summary judgment evidence by failing to brief the issue in this Court. In any event, the court did not abuse her discretion in sustaining the objections.

4903-6921-7390

## RECORD AND APPENDIX

There is a Clerk's Record and a Supplemental Clerk's Record. Citations to items will be to page number: CR___ or Supp.CR___. There is a three-volume Reporter's Record. Citations will be to volume and page: ___RR___.

The following items are included in the Appendix to this brief:

App.1　　　　Order Granting Defendants' Motion to Exclude or Strike the Testimony of Sally Reeves (CR526)

App.2　　　　Order Granting Defendants' Motion to Exclude or Strike the Testimony of Dr. Gregory Olson (CR527)

App.3　　　　Order Denying Plaintiff's Motion to Compel Production of Documents by all Bear Creek Defendants (CR528)

App.4　　　　Order Denying Plaintiff's Motion to Amend Scheduling Order (CR529)

App.5　　　　Summary Judgment Order (CR701)

App.6　　　　Affidavit of Sylvia Acosta (CR417-424)

App.7　　　　Agreed Level Three Scheduling Order (CR77-81)

4903-6921-7390

# INTRODUCTION

This appeal involves straightforward pre-trial issues. It involves tracing the procedural history, reviewing the trial court's exercise of discretion in rendering orders regarding discovery and scheduling, and analyzing whether, just two weeks before the trial setting, LaFountain adduced more than a scintilla of evidence to support his claims that had been on file for more than thirteen years. LaFountain asks this Court to give him a pass and let him start over, but his arguments find no support in the record. He makes inflammatory accusations regarding the merits of his TMFPA claims and the discovery issues that underlie the final judgment. But the actual record belies his contentions.

This suit has been on file since 2012. Yet in all those years, LaFountain never did the work required to develop his far-reaching TMFPA claims. He complains that he was denied discovery, but he exercised no diligence for over a decade, and never even bothered to review documents Bear Creek made available. Under all of those circumstances, the trial court did not abuse her discretion in denying LaFountain's request for even more time. She did not abuse her discretion in striking two experts who were not timely designated and who never rendered actual opinions. And the court properly granted a no-evidence summary judgment because, after thirteen years, LaFountain lacked even a scintilla of evidence of the essential elements of his TMFPA claims. This Court should affirm and allow this saga to come to an end.

1

## A.    LaFountain files suit in 2012 but does nothing until 2024.

In March 2012, LaFountain filed this TMFPA *qui tam* suit against Bear Creek, a group of affiliated dental clinics. Supp.CR3. LaFountain, who previously worked at some of the dental clinics, brought this suit claiming that Defendants—through a concerted scheme used at all locations—violated the TMFPA by performing unnecessary or substandard dental procedures and submitting fraudulent bills to Texas Medicaid. CR4-61 (Fourth Amended Petition).

Suit was filed under seal but was unsealed in 2017 after the State declined to intervene. Supp.CR4-6. The docket sheet shows essentially no activity between 2017, when the case was unsealed, and November 2023, when new counsel appeared for Bear Creek. CR702-05. In January 2024, the trial court signed an Agreed Scheduling Order that set pretrial deadlines and a trial date in April 2025. App.7.

LaFountain's claims were far-reaching and entailed significant discovery. The TMFPA sets out a laundry list of activities relating to state health care programs that constitute "unlawful acts" under the statute. Tex. Hum. Res. Code § 36.002(1)-(13). LaFountain alleges that Bear Creek committed "unlawful acts" in violation of the TMFPA, including contentions that dental services Bear Creek provided were unnecessary and did not meet the standard of care for dentists. *See, e.g.*, CR43-47 ¶71(b) ("knowingly committing Unlawful Acts…for placing stainless steel crowns

4903-6921-7390

that were not medically necessary and/or were performed in a manner that did not meet professionally-recognized standards of care"); ¶71(u) ("knowingly committing Unlawful Acts by billing for x-rays that were not medically necessary and/or were redundant"); ¶71(v) ("knowingly committing Unlawful Acts by seeking reimbursement from Medicaid for services that were not medically necessary").

LaFountain seeks to recover civil penalties from Bear Creek "of tens of millions of dollars (and perhaps in excess of $100 million)." CR51. Civil penalties under the TMFPA are imposed on a per-event basis. To prove those far-reaching claims and recover the substantial civil penalties he seeks, LaFountain would need to review hundreds or perhaps thousands of individual Bear Creek patient charts to determine whether specific x-rays or specific dental services were "medically necessary and/or redundant" or "performed in a manner that did not meet professionally-recognized standards of care," as he alleges. CR43-47.

The record reflects that LaFountain simply never did that work. Putting aside the five years the case was under seal, he did no meaningful discovery or case preparation from *2017*, when it was unsealed, to January *2024*, when the Agreed Scheduling Order was signed. LaFountain brief never mentions those years of inactivity. Discovery went forward in 2024, but LaFountain still failed to act diligently.

B.    <u>Bear Creek produces substantial amounts of hard copy and electronic files.</u>

LaFountain represents that "the Bear Creek Defendants steadfastly objected to producing **ANY** documents in response to over 60 requests." Brief.8 (emphasis in original). In fact, in May 2024, Bear Creek made significant amounts of hard-copy documents available to LaFountain for review. App.6 (Bear Creek custodian of records affidavit). Documents were produced in hard copy because LaFountain's document requests went back to 2004, and at that time Bear Creek patient-care records were made and kept in hard copy and not electronically. App.6 ¶4; CR327 ¶6 (Third Request for Production: "Unless otherwise noted, the time period for these Requests for Production of Documents is January 1, 2004 until present."). That production of hard-copy materials, as they are kept in the usual course of business, is the primary method contemplated by the Rules. *See* Tex. R. Civ. P. 196.3(c).

Bear Creek made available to LaFountain hundreds of boxes of documents, which were produced in the manner in which they were kept in the usual course of business:






App.6 ¶5-6. These documents included "End of Day" reports, which reflect accounting and reports documenting dentists' services, charges, review of charges, and billing records. *Id*.

Bear Creek also produced patient charts in hard copy, going back to 2004, that included x-rays and other scans. App.6 ¶7. The charts were in filing cabinets, organized by patient name, as they were kept in the usual course of business:




App.6 ¶7.

4903-6921-7390

LaFountain's counsel spent less than two hours reviewing the hard copy documents and patient charts produced to him, marked a small number for copying, but never actually got any documents copied. CR288 ("Please hold off for now copying any of it."); *see also* 2RR9 (LaFountain counsel: "And initially I just tagged a bunch of them just randomly to be copied.").

Bear Creek also produced patient charts to LaFountain electronically on a thumb drive that required particular software to allow review of x-rays and provided a step-by-step tutorial on how to access the x-rays. CR298-300; App.6 ¶¶9-14. LaFountain claimed that his expert could not access the data on the first thumb drive, so Bear Creek provided a second thumb drive along with technical information regarding how to download and use the software to view the x-rays:

4903-6921-7390

Rusty:

No, we are not sending JPEG images – you can't diagnose anything from a JPEG image, which your expert should know. Candidly, I'm surprised and disappointed that was even suggested because it's unreliable.

There is a thumb drive at my office for you to pick up with the information you requested. The thumb drive has the information you requested, plus the software. The Dexis Viewer software is not proprietary and can also be downloaded by the public. It is available and free to download as part of the Dexis Imaging Suite at:

https://dexis.com/en-eu/download-center

DEXview will allow a Windows or Mac OS to view and/or manipulate Dexis Image (.dex) files. Neither OS, without this viewer installed, will be able to open a .dex file. It may be necessary or required to change the file association type within the relevant OS. In Windows, for example, this would mean going into the Default Programs/Apps and associating a file type or protocol with a program.

Specifically, you would want the default app for .dex to be DEXview.



Lastly, unless a computer houses enough memory, that will cause error displays when you try to open files, so you need to check that.

If you still can't get these images to load for you, you need to hire your own IT guy to figure out the technology. It's not my job or my client's job to handle this for you. Absent you not seeing something you asked for, we are done with assistance on this issue.

CR302; *see also* App.6 ¶11 (Bear Creek custodian of records: "After Bear Creek was notified that the first thumb drive was difficult to manage for Plaintiff's counsel, I loaded a second thumb drive with the same information, and also loaded the Dentrix and Dexis viewers' 'load files' or applications on the thumb drive. We likewise gave instructions on how to do so. Again, I verified all responsive data was included and accessible.").

LaFountain complained that he still could not access the patient files and x-rays on the second thumb drive, so Bear Creek took the extraordinary step of purchasing a laptop computer for LaFountain and his counsel, loading it with the

7

necessary software and patient files, and providing it to LaFountain. CR310-14; App.6 ¶¶12-14. LaFountain complains that the information on the laptop is incomplete, but the Bear Creek custodian of records explained that all of the electronic patient files were complete and accessible when she prepared and produced the two thumb drives and the laptop: "Neither of the thumb drives nor the laptop were corrupted in any manner when we produced such materials. To the contrary, all three devices loaded and were accessible by me when utilized. I cannot speak to what actions [LaFountain or his] counsel took in altering the devices or data." App.6 ¶14.

C.    LaFountain's expert designations are a day late and a dollar short.

The Agreed Scheduling Order provided that LaFountain must designate all experts by October 15, 2024, "by describing and producing all the information set out in" Tex. R. Civ. P. 195.5.[1] App.7. The rule requires designations to set out much more than simply name and CV. Expert designations must disclose the actual expert opinions: "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them." Tex. R. Civ. P. 195.5(a)(3).

On November 6, 2024—three weeks after the expert deadline—LaFountain served designations for two retained experts, Dr. Gregory Olson and Sally Reaves.

---

[1] The Scheduling Order cites Tex. R. Civ. P. 194.2, which was the predecessor rule defining the scope of expert designations.

8

CR151-96. Bear Creek moved to strike the experts on various grounds, including that the designations were untimely and insufficient. CR62-75; CR131-143.

Among other deficiencies, Dr. Olson's designation failed to state any actual opinions but promised to provide the "substance of his opinions" in a future report:

> The general substance of his opinion will be based on his review of charts of several doctors at Bear Creek as to multiple categories of improper and/or excessive treatment as alleged in Plaintiff's most recent Petition which constitute unlawful acts in violation of the Texas Medicaid Fraud and Prevention Act. *The substance of his opinions will be described in further detail in the forthcoming expert opinion* of Dr. Olsen which will be timely supplemented.

CR154 (emphasis added).

After Bear Creek moved to strike the experts, on January 31, 2025 (more than three months past the expert designation deadline), LaFountain filed an affidavit from Dr. Olson that tried to provide more detail regarding his expert opinions, but even that late-filed document did no more than "recommend an audit and investigation of a larger sample of complete records," and explain that, only after further discovery and analysis will Dr. Olson "then be able to be more specific and detailed as to my opinions." CR473; *see also* CR472 ("15. I will be willing to be more specific as to the violations of the standard of care as to each completed chart I reviewed in a deposition or otherwise. It would be helpful if I was given more time to review additional complete charts to further clarify the opinions set forth above. I will also identify which patients have information missing if requested to do so.").

4903-6921-7390

Dr. Olson's designation also failed to identify "documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony," as required by Rule 195.5(a)(4)(A). *Id*. Reaves' designation similarly fails to produce or identify the documents she reviewed or relied on. CR84.

Regarding Reaves' expert opinions, her designation includes a report that is limited to a statistical analysis of work by one dentist—Dr. Benitez—at a Bear Creek clinic between February 19, 2008 and May 30, 2009. CR97-105. She opines that Dr. Benitez billed Texas Medicaid for an excessive number of procedures during that period based on how much time each procedure should take. CR97-105. Reaves is *not a dentist*; she cannot opine as to whether any given dental procedure took an appropriate length of time. But in addition, her report makes clear that her work is incomplete: "This report will be timely supplemented to include *information as to other Bear Creek doctors* as well as an analysis of *additional charts of Dr. Benitez*. She *may also* testify to the amount of civil monetary penalties and other remedies allowable under the" TMFPA. CR84 (emphasis added).

As he had done with Dr. Olson, LaFountain submitted a supplemental report by Reaves on January 31, 2025 (more than three months after the expert designation deadline and just two months before the trial setting). CR511-16. The supplemental report is also limited to Dr. Benitez, and it explains that her opinions depend on

further expert work by Dr. Olson to "review the clinical records, such as x-rays, that should support each billed claim data record." CR516.

D.    The first hearing on pretrial matters.

In February 2025 (two months before the trial date), the court held a hearing on Bear Creek's motions to strike the experts and LaFountain's motions to compel discovery of additional documents and to amend the Agreed Scheduling Order to continue the trial setting and give him more time to work up his case. CR199 (motion to compel); CR238 (motion to amend scheduling order); 2RR (hearing transcript).

LaFountain argued that the court should amend the Agreed Scheduling Order and grant his motion to compel because Bear Creek had not produced responsive documents in discovery, and his expert had been unable to access the patient files on the thumb drives and laptop Bear Creek provided. But the record shows otherwise. In addition to evidence that Bear Creek had produced all of the information in hard copy, at the hearing Bear Creek demonstrated to the court, on an identical mirrored laptop, that all of the requested patient files were on the laptop, and all of the x-ray images on the laptop could be opened and viewed. 2RR31-41; *see also* 2RR45 (Bear Creek counsel: "We produced the 90 charts. We produced them on the first thumb drive. We produced them on the second thumb drive. We produced them on the laptop. If Mr. Tucker had brought the laptop with him here today, we could open it up and see whether or not they're on there. We went through the effort of purchasing

11

a laptop and loading it up….I mean, that's such an extraordinary length. So we've produced them, and I submit that the expert's inability to find the information on that laptop or on the thumb drives is not a default on our part."). Through the in-court demonstration, the court was able to see the patient charts LaFountain complained were insufficient and confirm that no data was corrupted and the charts contained x-rays that could be opened and viewed.

Throughout the hearing, the court pressed LaFountain's counsel to identify specifically what information he contended was or was not produced: "Please tell me what you asked for, what you received, and what's deficient." 2RR17. The court denied LaFountain's motions to amend the scheduling order and to compel because he had the burden on the motions, and he never identified what information Bear Creek failed to provide:

> <u>Court</u>: I think the problem here is you're saying, "I didn't get it." They're saying, "We provide everything in full." And then when I come back to you, you're not able to show me exactly -- you're not able to show the Court what exactly they provided and what they didn't and exactly where it's deficient. It's just a very global, "I didn't get it." They say, "We gave it to you." And you have the burden in a motion to compel to show me exactly what you received and how it's deficient. And what I'm hearing is not helpful to the Court on a motion to compel. Usually what I see are people showing me charts of exactly what they've received and what is deficient. And then there's a back and forth, and I can make a determination. But here I've got you saying, "I didn't get it. I didn't get it." I've got them saying, "We provided you the full chart." And then you're not able to pinpoint -- you're not able to give me the specificity needed.

2RR48-49.

4903-6921-7390

The court also heard argument on Bear Creek's motions to strike Dr. Olson and Reaves. 2RR53-65. In addition to being untimely, the designations failed to disclose any actual opinions because the experts had not yet done their work:

> Bear Creek counsel: That's the exact thing that is prohibited by the rules and the case law and why you can't have that. And when someone says, "I would like to receive completed charts in order to give my opinion, larger numbers of charts so that I can confirm a pattern that I have observed," that's telling me that they don't have the information. And when they come back and then, basically, say, "Upon Miss Reaves completion of any analysis she might do, I can then give a detailed opinion in this regard," that means she didn't. That means you didn't.

2RR64.

At that point, the case had been on file 13 years, and trial was two months away. Under all of those circumstances, the court rendered orders (1) denying LaFountain's motions to compel and to amend the Agreed Scheduling Order, and (2) granting Bear Creek's motion to strike Dr. Olson and Reaves. App.1-App.4.

E.     The no-evidence summary judgment.

Bear Creek filed a no-evidence motion for summary judgment addressing numerous elements of LaFountain's TMFPA claims. CR530-70. LaFountain filed a response that attached only two exhibits: (1) an Affidavit of Josh LaFountain, and (2) the petition from a different TMFPA suit filed in Dallas. CR571-700.

Bear Creek filed objections to LaFountain's evidence, particularly the LaFountain Affidavit, which was replete with hearsay, *ipse dixit* assertions, conclusory contentions, and purported expert testimony regarding the standard of

4903-6921-7390

care and medical necessity of dental procedures performed by Bear Creek. Supp.CR.15-20. Among other things, Bear Creek raised the following objections:

- Objection 1: The Affidavit purports to identify extrinsic evidence supporting the TMFPA claims, but it fails to supply that evidence. LaFountain asserts that there are documents within Defendants' control that "would clearly assist in proving each and every element of each and every cause of action," and that there are "dozens of witnesses that can support my allegations with respect to each cause of action," but does not provide any such documents or proffer any witness testimony by deposition or affidavit. [CR600 ¶7] He states that he has personal knowledge that Defendants billed Medicaid for specific dental services but provides no billing or payment records. He asserts that Defendants performed unnecessary or inadequate dental services but provides no patient charts or x-rays or other evidence of the work actually performed…Defendants object that such references are no evidence at all, they rely on pure hearsay, and they violate the best evidence rule. The Court should strike the following portions of the Affidavit on this basis: Paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 20, 21, 24, 25, 28, 29, 32, 34, 37, 39, 42, 46, 48, 49.

- Objection 2: The Affidavit asserts that Defendants billed Medicaid for dental services that were not necessary or that "did not meet professionally-

4903-6921-7390

recognized standards of care." [CR600-01 ¶8(a)] LaFountain thereby is proffering opinion testimony that only an expert witness can provide. This is the sort of expert testimony that [LaFountain] designated Dr. Gregory Olson to provide, but Dr. Olson has been stricken as an expert. The Affidavit also purports to use statistical modeling regarding one dentist, Dr. Benito Benitez, whose "Medicaid billings far exceeded the standard deviation for a dentist in the same or similar clinic setting." [CR605 ¶10] This testimony is taken directly from the work of Relator's other stricken expert, Sally Reaves. Indeed, the Affidavit recites expressly that the testimony regarding Dr. Benitez comes "via the expert reports of Sally Reaves." [CR606 ¶12] LaFountain was never designated as an expert witness in this case. Moreover, LaFountain is not a dentist or a statistician and would not be qualified to offer such expert testimony even if he had been properly designated. LaFountain's purported expert testimony is not admissible in an effort to avoid a no-evidence motion for summary judgment. The Court should strike the following portions of the Affidavit on this basis: Paragraphs 8, 10, 11, 12, 14, 15, 16, 17, 20, 29, 32, 34, 36, 39, 42, 46.

- Objection 6: The Affidavit is replete with conclusory allegations that Defendants committed "unlawful acts" in violation of the TMFPA and did so "knowingly." For example, LaFountain states that "I personally observed

15

numerous actions by multiple dentists, employees, and agents of one or more dental clinics which are systematically designed to defraud Medicaid in violation of the" TMFPA. [CR599-600 ¶6] Yet the Affidavit provides no specific information in support. The Court should strike the following portions of the Affidavit on this basis: Paragraphs 6, 8, 20, 24, 25, 28, 29, 32, 34, 37, 39, 42, 45, 46, 48, 49.

- Objection 9: The response purports to rely on alleged documents that Defendants never produced to him and "dozens" of witnesses who can support Realtor's contentions. None of that claimed evidence is filed or made part of the summary judgment record. Relators' statements that such evidence exists are hearsay and violate the best evidence rule.

Supp.CR15-20.

Bear Creek also objected that the LaFountain Affidavit's allegations regarding the use of fluoride varnish were subject to automatic exclusion because they were never disclosed in discovery responses, nor were any such allegations included in LaFountain's lengthy petition. Supp.CR18-19.[2] Because LaFountain never disclosed any "evidence" of an alleged lack of fluoride varnish in response to interrogatories, his sham Affidavit could not raise the issue for the first time in an effort to defeat

---

[2] LaFountain's brief repeats the allegations regarding a supposed lack of fluoride varnish in Bear Creek clinics. Brief.6, 33, 37, 39, 40, 42-44, 49.

4903-6921-7390

summary judgment. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018) (striking sham affidavit: "The basis for the rule is that allowing manufactured affidavits to defeat summary judgment would thwart the very object of summary judgment…."). Supp.CR19.

On March 31, 2025—just two weeks before the agreed trial setting—the court held a hearing on the no-evidence motion for summary judgment. 3RR. The court rendered an order sustaining Bear Creek's evidentiary objections and granting summary judgment. App.5.

<u>SUMMARY OF THE ARGUMENT</u>

This Court should affirm the judgment here because it was high time for this suit to end. At the time of the February 4 hearing on the pretrial motions, the suit had been pending for thirteen years and unsealed for six years. LaFountain had engaged in essentially zero case preparation between 2017 and the end of 2023, but his brief makes no mention of those years of inactivity. LaFountain complains that he was denied discovery in 2024, but the *record* showed that he never reviewed or copied the hard copy documents produced to him, the Bear Creek custodian of records confirmed that the two thumb drives and laptop provided all of the requested patient charts to him, and LaFountain made no attempt to meet his burden and demonstrate for the trial court what was deficient in the discovery Bear Creek provided to him.

4903-6921-7390

Under all of those circumstances, it was not an abuse of discretion for the trial court to hold LaFountain to the pretrial deadlines in the Agreed Scheduling Order and strike his late-designated experts. The court then properly granted the no-evidence motion for summary judgment because, although LaFountain makes inflammatory allegations of unlawful acts, he had no *actual evidence* to support his TMFPA claims.

ARGUMENT

A.    The trial court did not abuse her discretion in striking LaFountain's experts.

1.    The standard of review is deferential to the trial court's determination.

This Court reviews the trial court's decision to strike LaFountain's experts for abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam); *Garrett v. Brinkley*, No. 03-14-00431-CV, 2016 WL 240896, at \*2 (Tex. App.—Austin Jan. 15, 2016, no pet.).

When a party fails to timely designate an expert, as here, exclusion is "*mandatory and automatic* unless the court finds there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party." *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied) (emphasis added); Tex. R. Civ. P. 193.6(a); *see also Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (per curiam). "The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the

18

witness. *A finding of good cause or the lack of unfair surprise must be supported by the record.*" Tex. R. Civ. P. 193.6(b) (emphasis added); *see also Pjetrovic v. Home Depot*, 411 S.W.3d 639, 646 (Tex. App.—Texarkana 2013, no pet.) (party seeking to proffer the expert testimony "has the burden of establishing good cause or a lack of unfair surprise or prejudice").

2. It was not an abuse of discretion to strike Dr. Olson.

 a. The expert designation was not timely and did not disclose Dr. Olson's expert opinions.

The deadline for designating experts under the Agreed Scheduling Order was October 15, 2024. App.7. LaFountain served the original designation of Dr. Olson on November 6, 2024, which was three weeks late. CR151-55. Moreover, the original designation did not include any actual opinions by Dr. Olson. CR154 ("The substance of his opinions will be described in further detail in the forthcoming expert opinion of Dr. Olson."). After Bear Creek moved to strike Dr. Olson, LaFountain filed a supplemental affidavit by Dr. Olson on January 31, 2025, more than three months after the expert designation deadline, and that eleventh-hour supplement acknowledged that Dr. Olson still had not done his work. CR472-73 ("I recommend an audit and investigation of a larger sample…I will then be able to be more specific and detailed as to my opinions.").

Because Dr. Olson was not timely designated, exclusion is automatic unless LaFountain met his burden to show either good cause or lack of prejudice *as*

19

*established by the record*. The trial court did not abuse her discretion in determining that he did not meet that burden.

LaFountain argues that Dr. Olson could not view patient charts and x-rays on either of the two thumb drives or the laptop that Bear Creek provided, and that establishes good cause for his failure to designate Dr. Olson timely. But those bare assertions do not establish good cause for the late designation, for numerous reasons. First, LaFountain ignores his wholesale failure to conduct discovery or otherwise develop his case between 2017 and late 2023. Second, LaFountain failed to review or copy the hard copy documents and patient charts (which included x-rays and scans) that were produced to him many months before the expert deadline. Third, the Bear Creek custodian of records testified that both thumb drives and the laptop had all of the requested patient charts—including x-rays and scans—at the time they were given to LaFountain's counsel. App.6. Fourth, at the hearing, counsel for Bear Creek demonstrated how the patient charts on the laptop could be opened and x-rays viewed using the software provided.

It was not an abuse of discretion for the trial court to consider all of those facts and conclude that LaFountain did not meet his burden to demonstrate good cause for his late designation, particularly given the parties' competing contentions regarding what was produced and what was not. 2RR48-49 (Court: "But here I've got you saying, 'I didn't get it. I didn't get it.' I've got them saying, 'We provided you the

20

full chart.' And then you're not able to pinpoint—you're not able to give me the specificity needed."). Under such a record, where there are "attorneys' competing representations about production or nonproduction of records," this Court in review must defer to the trial court's determination:

> *In light of the attorneys' competing representations about production or nonproduction of records the issue was one for the trial court to resolve.* To the extent the trial court's ruling excluding Dr. Smith's deposition implies a finding that neither set of records from Spring Spine Center was timely produced*, we may not set that finding aside in the absence of an abuse of discretion since the trial court was in the best position to make the determination based on firsthand assessments of credibility.* Without specific information showing what medical records were produced at what time, we cannot say the trial court abused its discretion in deciding Spring Spine Center's records had not been timely and properly produced as a method of disclosing the general substance of Dr. Smith's opinions and the bases therefor.

*Fults v. Standley*, No. 09-22-00126-CV, 2025 WL 2164868, at *7 (Tex. App.—Beaumont July 31, 2025, pet. filed) (emphasis added).

Nor did LaFountain meet his burden to show a lack of prejudice to Bear Creek by the untimely designation. The initial expert designation was served November 6, 2024, which was just nine days before Bear Creek's expert designation deadline of November 15. App.7. Dr. Olson's supplemental affidavit—which was the first time LaFountain attempted to disclose any expert opinions at all—was filed January 31, 2025, more than two months after Bear Creek's response expert designation deadline, two weeks before the close of discovery on February 14, and two months before the trial date in April. App.7. It was not an abuse of discretion for the trial

21

court to consider the entire timetable and conclude that Bear Creek would be prejudiced because it could not designate its own experts, complete discovery, or prepare for trial in April given LaFountain's untimely designations.

Independent of the timeliness issue, it was not an abuse of discretion to strike Dr. Olson because his designation failed to adequately disclose his opinions. In fact, both the original and the supplemental submissions made clear that Dr. Olson had not done his expert work yet. LaFountain argues that he is permitted to state in the designation that opinions would be provided through future supplementation. Brief.15. That is not correct. Rule 195.5(a)(3) requires that the expert's opinions be included *in the actual designations*, not merely a promise to supplement with the opinions at some unidentified point in the future.

"The purpose of this pretrial disclosure rule is to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew*, 142 S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied); *Fults v. Standley*, 2025 WL 2164868, at *6. The inadequate designations of Dr. Olson's opinions do not come anywhere near that standard. Nothing in the vague description provides Bear Creek with any detail about Dr. Olson's opinion. It does not identify the patient charts that Dr. Olson will opine about or identify which categories of treatment Dr. Olson believes were improper or excessive. Nor does it identify *why* Dr. Olson

22

believes particular categories of treatment were improper or excessive. In fact, it does not even identify a single opinion, and it was not an abuse of discretion for the trial court to strike him as an expert.

### b. Dr. Olson's opinions were properly excluded on their merits.

In addition to the untimeliness and failure to disclose expert opinions, the trial court did not abuse her discretion in striking Dr. Olson because his testimony does not meet the level of reliability required by Tex. R. Evid. 702. A court must exclude the opinion testimony of an expert witness who is not qualified to give an opinion by knowledge, skill, experience, training or education in the actual subject matter about which they are offering an opinion. Tex. R. Evid. 702; *Broders v. Heise*, 924 S.W.2d 148, 153–54 (Tex. 1996); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006).

For example, LaFountain designated Dr. Olson as an expert who may "testify to the amount of civil monetary penalties and other remedies allowable under the Texas Medicaid Fraud and Prevention Act based on his findings." CR153. Nothing in Dr. Olson's CV indicates that he is qualified to reach an opinion about statutory remedies. Dr. Olson is an orthodontist, pediatric dentist, and a professor at UTHealth Houston School of Dentistry. Because Dr. Olson has no background, expertise, training, or education related to the TMFPA or calculating penalties under it, the trial court did not abuse her discretion in striking him as an expert on this topic.

23

It was also proper to strike Dr. Olson's designation because his opinions are unreliable. If the underlying facts or data upon which the expert's opinion is based are flawed or insufficient, the resulting opinion will also be unreliable. Tex. R. Evid. 705(c); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). Moreover, if the expert's factual assumptions have no evidentiary support in the record or are contrary to proven facts, the expert's testimony based on those assumptions is not competent. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 833 (Tex. 2014). Further, even when the underlying data are sound, an expert's testimony is unreliable if the expert draws conclusions from that data based on flawed methodology. *Merrell*, 953 S.W.2d at 714.

Dr. Olson's *ipse dixit* opinion that the unidentified "charts of several [unidentified] doctors at Bear Creek" show "multiple categories of improper and/or excessive treatment" is "devoid of any scientific testing or peer-reviewed studies confirming the hypothesis." *Cooper Tire*, 204 S.W.3d at 802. Because Dr. Olson's opinions are devoid of any testing or studies confirming his hypothesis, the potential rate of error is unknown, and there is no way to know whether his theory has been accepted as valid by the dental community. *Id.*; *see also E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). Dr. Olson's opinion also lacks any quantitative analysis. *Id.* In fact, it contains no analysis at all—just a vague reference that his review of unnamed doctors' charts led to his opinion that the charts

24

contained "multiple categories of improper and/or excessive treatment." Because Dr. Olson's opinion does not satisfy any of the *Robinson* factors for reliability, it was not an abuse of discretion to strike him.

3. It was not an abuse of discretion to strike Reaves.

Reaves' designation suffers from many of the same defects as Dr. Olson's, and the trial court properly struck Reaves for the same reasons she struck Dr. Olson.

a. The designation was untimely and insufficient.

LaFountain designated Reaves as an expert witness regarding "data analysis and claims reviews of data received from Texas HHSC as well as the Defendants." CR84. She is not a dentist and thus cannot opine as to whether any given treatment or x-ray was unnecessary or not performed to the standard of care. Reaves' testimony is thus limited to *statistical* analysis of dental treatments and billing.

LaFountain designated Reaves on November 6, 2024, three weeks after the October 15 deadline. Because Reaves was not timely designated, exclusion is automatic unless LaFountain met his burden to show good cause or lack of prejudice *as established by the record*. Tex. R. Civ. P. 193.6(a). LaFountain asserts that there was a lack of prejudice because he provided Reaves' initial report and an e-mail explanation of her testimony to Bear Creek's counsel in March 2024. Brief.21-22 (citing CR495-96). In support of that representation, his citations to the Clerk's Record are to his own pleadings in the trial court, not to any actual evidence of such

4903-6921-7390

alleged communications such as copies of e-mails or a declaration. The trial court did not abuse her discretion in determining that he did not meet his burden.

In addition to being untimely, Reaves' designation was insufficient. Though it included a report with certain time-limited statistical findings regarding one dentist, the designation also stated that Reaves had not completed her work, and her report "will be timely supplemented to include information as to other Bear Creek doctors as well as an analysis of additional charts of Dr. Benitez." CR84; *see also* CR103 (report: dental records regarding Dr. Benitez's patients "warrant further review for veracity and medical necessity"). Putting aside the notion that LaFountain could "timely" supplement a designation that was already weeks late, the designation does not give Bear Creek "sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Fults v. Standley*, 2025 WL 2164868, at *6. After all, Bear Creek's responsive expert deadline was just nine days after LaFountain's late-filed designation, so the inadequate designation leaves Bear Creek wholly unable to prepare that rebuttal expert evidence. App.7. The trial court did not abuse her discretion in striking Reaves for this reason.

> b. Reaves' opinions were properly excluded on their merits.

The trial court also properly struck Reaves testimony as unreliable. Reaves opined that each and every instance of Dr. Benitez's billing for certain procedures

was fraudulent because www.healthline.com stated that those procedures take a certain amount of time to perform. CR101. But the website Reaves cites as the basis for her opinion states that its content "is general in nature and for informational purposes only and does not constitute medical advice….Healthcare Media does not recommend or endorse any specific…opinion, service or other information that may be mentioned in Healthline Media's websites, apps, and Content."[3] Reaves' opinion thus relies on a website that specifically advises its users *not* to rely on it.

Reaves also relies on a website called "www.dentaldepot.net" to support her opinion that a pulpotomy procedure takes 30 to 60 minutes. CR101. The website's logo is a train and there is no indication that it is the type of resource an expert can properly rely upon:



"Expert testimony is unreliable if it is based on unreliable data." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007). Unreliable expert testimony is

---

[3] Disclaimer, https://www.healthline.com/about/additional-information (last visited Oct. 9, 2025).

4903-6921-7390

inadmissible. *Robinson*, 923 S.W.2d at 557. Reaves's opinions regarding Dr. Benitez are based on an assumption that any billing for certain procedures is inherently fraudulent because of the amount of time those procedures take, but the basis of her opinion regarding the amount of time those procedures require are websites with no indicia of reliability.

LaFountain also designated Reaves as an expert who may also "testify to the amount of civil monetary penalties and other remedies allowable under the Texas Medicaid Fraud and Prevention Act based on his findings." CR84. To reach her opinion as to the amount of TMFPA civil penalties or other remedies, Reaves opines about what constitutes improper or excessive dental procedures. But Reaves is not a dentist; she is an actuary. She is thus not qualified to opine regarding whether specific procedures were proper or not.

Reaves's opinions are unreliable because the analytical gap between the data she relied on and the testimony offered is too great. In assessing the analytical gap, the court should consider whether (1) the expert's field of expertise is legitimate, (2) the subject matter of the testimony is within the scope of the expert's field of expertise, (3) the testimony properly relies on principles involved in the expert's field of expertise, and (4) the expert showed a connection between the data relied on and the opinion offered. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 717 (Tex. 2016). Reaves has shown no connection between the data she relied upon

and the opinion she offered. Rather, her opinions are entirely conclusory. "An expert's failure to explain or adequately disprove alternative theories...makes his or her own theory speculative and conclusory." *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010). Here, Reaves has not offered any opinion as to what portion of the procedures she has identified may be legitimate, proper, and not excessive. She simply opines that a certain number of a particular procedure by a provider makes them all per se fraudulent. Because her opinion contains no connection between the data she relied upon and the opinion she offers, it was not an abuse of discretion to strike her.

B.    <u>The trial court did not abuse her discretion in denying LaFountain's motion to compel production of additional documents.</u>

LaFountain's eleventh-hour motion to compel involves documents requested in his Second, Third, and Fourth requests for production. LaFountain argues that the hundreds of boxes of hard copy documents Bear Creek produced to him in May 2024 did not contain any of the documents he seeks through the motion to compel because the Second, Third, and Fourth requests for production were served after that production. Brief.29. But LaFountain ignores that the documents produced in May 2024 are responsive to many of his subsequent requests, and he never identified to the trial court what information was lacking. 2CR48-49 (Court: "I think the problem here is you're saying, 'I didn't get it.' They're saying, 'We provide everything in full.' And then when I come back to you, you're not able to show me exactly --

you're not able to show the Court what exactly they provided and what they didn't and exactly where it's deficient.").

The trial court did not abuse her discretion in denying the motion to compel because the documents LaFountain seeks are either privileged, irrelevant, or already produced in the manner they are kept in the usual course of business.

For example, LaFountain seeks production of documents compiled as part of a regular, periodic audit of Bear Creek by the Texas Attorney General's Office of Inspector General ("OIG"). Brief.30-31. But by statute, all such information is privileged. The Texas Government Code protects from discovery exactly this sort of information gleaned during a government audit:

> All information and materials subpoenaed or compiled by the office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.

Tex. Gov't. Code § 531.1021(g); *Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 708 (Tex. App.—Austin 2016, no pet.) ("Of course, under our holding here, information collected in an OIG investigation concerning the subject matter of Subchapter C would be confidential under section 531.1021(g) and not subject to disclosure."). LaFountain does not mention the statutory privilege in his brief.

4903-6921-7390

LaFountain also moved to compel 90 patient charts that Bear Creek had already provided to him three times—on two thumb drives and a laptop. He acknowledges that counsel for Bear Creek demonstrated at the hearing that specific patient files that Dr. Olson swore were missing x-rays were in fact on the laptop and included x-rays that could be opened and viewed.[4] But he insists that the trial court should not have accepted the demonstration "without any proof whatsoever offered by the Defendants" that all of the files were complete and viewable. Brief.32. But Bear Creek does not have the burden on this issue. That is on LaFountain. He must demonstrate, through evidence in the record, that he was not provided specific, responsive discovery items, and he made no attempt to do so.

LaFountain complains that Bear Creek did not produce documents "reflecting the average amount billed to Medicaid per patient for Bear Creek dentists." Brief.33. That request improperly asks Bear Creek to do LaFountain's work for him. In the May 2024 hard copy document production, Bear Creek produced "End of Day" reports, which include all of the treatment, accounting, and billing information for Bear Creek patients as that information is kept in the usual course of business. From

---

[4] The discussion of the laptop demonstration appears at 2RR35-39. Dr. Olson made a list of electronic patient charts he claimed had no x-ray images. CR338. Dr. Olson's list identified a dentist, Henegar, working at the Spring Valley clinic, and listed seven patient charts for Dr. Henegar that allegedly did not include x-ray image files. *Id*. The first patient on that list was Beltran. *Id*. At the hearing, counsel for Bear Creek walked the court through the patient files on the laptop and demonstrated that there were x-ray images in Beltran's file that could be opened and viewed. 2RR35-39.

that accounting and billing information, LaFountain could do the work to calculate the per-patient Medicaid billing.

The same is true of the request for documents reflecting when certain specific dentists billed a certain code. Brief.33. Bear Creek produced the billing and accounting information, and LaFountain could have reviewed those documents to identify when the dentists used that code. Nothing in the Rules of Civil Procedure require a party responding to discovery to create new documents or summaries of information that is already produced in the manner in which it was kept in the usual course of business.

The documents LaFountain sought through the motion to compel are thus either privileged, already produced, or irrelevant. Moreover, the motion to compel was too late. LaFountain filed his motion to compel on January 23, 2025—less than three months before the April trial setting. CR199. The trial court asked counsel several times whether he had filed a motion to compel earlier, at a time when the court could have given meaningful relief if the request had merit. *See, e.g.*, 2RR12; 2RR13 ("No. My question was: And did you file a motion to compel at that time? Because now we're on the third incident, right?"); 2RR14 ("The third time it's a laptop. And you're saying it was deficient as well…When you found out it was deficient, did you file a motion to compel at that time?"). LaFountain's counsel admitted that, although he threatened multiple times during 2024 to file a motion to

32

compel, he only actually did so in January 2025, after Bear Creek filed motions to strike his experts and such a short time before trial.

For all of these reasons, the trial court did not abuse her discretion in denying the motion to compel.

## C. It was not an abuse of discretion to deny LaFountain's motion to amend the Agreed Scheduling Order.

Through his motion to amend the Agreed Scheduling Order, LaFountain asked the trial court to push back all of the deadlines—including the upcoming trial setting—by eight months to give him more time to work up his case. CR239. The timing and procedural history of this case are discussed thoroughly above, including LaFountain's utter lack of diligence in working up his case for five years after the sealing was lifted in 2017, his failure to review hard copy patient files and accounting and billing files that were made available to him, his technical inability to open patient charts and x-rays on the thumb drives and laptop, the late and incomplete expert designations, and his failure to meet his burden to identify for the trial court what had been produced to him and what was deficient.

LaFountain complains about how the hard copy boxes of documents were produced. Brief.36-37. But producing documents as they are kept in the usual course of business is the primary method of organization under the discovery rules: "The responding party must either produce documents and tangible things *as they are kept*

4903-6921-7390

*in the usual course of business* or organize and label them to correspond with the categories in the request." Tex. R. Civ. P. 196.3(c) (emphasis added).

The trial court considered all of that history, including that the case had been on file for twelve years and the trial setting was just two months away. Given all of those circumstances, the trial court did not abuse her discretion in holding LaFountain to the Agreed Scheduling Order and declining to kick the can further down the road.

D.   <u>Summary judgment was proper because, after twelve years, LaFountain had no evidence to support his TMFPA claims.</u>

1.   <u>The trial court sustained Bear Creek's objections to LaFountain's only summary judgment evidence, and he has waived any error regarding that ruling.</u>

Bear Creek filed a no-evidence motion for summary judgment because, after adequate time for discovery, LaFountain had no actual evidence of essential elements of his TMFPA claims. CR530-68. In response, LaFountain filed only two exhibits as "evidence" of his claims: (1) his own affidavit, and (2) the petition in a different TMFPA suit filed in Dallas County. CR597-698. Bear Creek filed detailed objections to those exhibits, including paragraph-by-paragraph objections to the LaFountain Affidavit and its exhibits. Supp.CR15-20. The trial court sustained the objections to LaFountain's summary judgment evidence. App.5 ("IT IS FURTHER ORDERED that Defendants' Objections to Relator's summary judgment evidence are sustained.").

4903-6921-7390

Because the trial court sustained the objections, LaFountain had, literally, no summary judgment evidence. None at all. In his brief to this Court, however, LaFountain cites extensively *and exclusively* to the stricken LaFountain Affidavit as providing evidence of his claims. In LaFountain's argument claiming that he adduced evidence regarding the elements of his TMFPA claims, *all* of the citations to evidence are to the LaFountain Affidavit and its exhibits, which appear at CR597-679. Brief.42-53; *see also* Brief.55 (LaFountain "submitted enough evidence *in the form of the Affidavit of Relator* that shows that there are genuine issues of material fact.") (emphasis added). LaFountain does not cite to any evidence other than the stricken LaFountain Affidavit.

LaFountain lists the trial court's decision to sustain the evidentiary objections as an issue on appeal. Brief.2, Issue No.5. But he includes no actual argument or discussion of the objections themselves, relevant case law, or the merits of the trial court's decision. Brief.54. Issue No.5 states that the trial court should have denied the evidentiary objections "for the reasons set forth below under the legal sufficiency standard." Brief.6. But the discussion of the legal sufficiency standard is limited to the general standards for no-evidence motions for summary judgment and does not mention the evidentiary objections. *Id*. The entire discussion of the evidentiary ruling is a short, three-sentence paragraph with the conclusory statement that LaFountain "was simply providing factual testimony in his Affidavit based on his

personal knowledge that showed that there were disputed issues of material fact as to whether sections of the TMFPA were violated." *Id*.

The "appellate-procedure rules, of course, 'require adequate briefing.'" *Bertucci v. Watkins*, 709 S.W.3d 534, 541 (Tex. 2025) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010); *see* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). A failure to comply with these rules can result in waiver. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015) ("Failure to provide citations or argument and analysis as to an appellate issue may waive it."). Because LaFountain failed to adequately brief the evidentiary issue, he has waived any error in sustaining objections to the LaFountain Affidavit. And without the LaFountain Affidavit, he has, literally, no evidence at all to meet his burden in responding to the no-evidence summary judgment motion.

To be sure, the trial court was correct on the merits in sustaining Bear Creek's objections to LaFountain's summary judgment evidence, including the LaFountain Affidavit and its exhibits. *See* Supp.CR15-20. Because LaFountain did not bother to brief the merits of the evidentiary objections, however, this Court need not wade through the issue.

36

## 2. No-evidence summary judgment was proper.

### a. There is no evidence that Bear Creek committed "unlawful acts" in violation of the TMFPA.

Claims under the TMFPA, at their core, involve billing to Texas Medicaid and receiving benefits from Texas Medicaid. The laundry list of "unlawful acts" all turn on whether a provider has improperly billed Texas Medicaid or acted to receive an improper benefit from Texas Medicaid. *See, e.g.*, Tex. Hum. Res. Code §36.002(1) ("knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person *to receive a benefit or payment* under a health care program that is not authorized or that is greater than the benefit or payment that is authorized"); §36.002(2) ("knowingly conceals or fails to disclose information that permits a person *to receive a benefit or payment* under a health care program that is not authorized or that is greater than the benefit or payment that is authorized"); §36.002(3) ("knowingly applies for and *receives a benefit or payment* on behalf of another person under a health care program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received").

Those are the core elements of a TMFPA claim, but LaFountain offered no evidence of them. There are no patient charts to show what dental work was done, whether it was necessary, or whether it was performed consistent with the standard of care. There are no billing records to reflect what Bear Creek billed to Texas

37

Medicaid and how they coded the dental treatments. There are no records to reflect what Bear Creek was paid for the dental services they provided. LaFountain offered only his *ipse dixit* Affidavit claiming that such evidence exists but failing to identify or produce any actual records or testimony.[5] Independent of the fact that the trial court struck it, the LaFountain Affidavit provides no evidence at all that Bear Creek committed "unlawful acts" in violation of the TMFPA.

b.    There is no evidence of damages.

One issue on summary judgment involves LaFountain's claimed measure of damages. In discovery, Bear Creek asked LaFountain to "state the total amount of monetary relief/remedies you are seeking to recover in this lawsuit and provide the factual basis and methodology for the amount you are seeking to recover." Supp.CR41 No.6. LaFountain's response, filed on February 14, 2025 (shortly before the summary judgment proceeding), was this:

> Response: Relator has not yet determined the amount of monetary relief/remedies/penalties he plans to seek at trial. In terms of the methodology for calculating remedies, Relator will request that the State of Texas be reimbursed for (a) the amount of claims for all

---

[5] For example, the LaFountain Affidavit included this conclusory allegation as supposed "evidence" of unlawful acts by Bear Creek in violation of TMFPA section 36.002(1): "20. I have personal knowledge from (a) my interactions with Bob Tafel in the form of individual meetings, breakfast and lunch meetings, conversations before and after hours with Bob Tafel; (b) my interactions with other management of Bear Creek, (c) my attendance at meetings where it was obvious that the activities of the company were committed knowingly; (d) my participation in government audits of the company wherein he observed charts being altered at the direction of Bob Tafel in advance of the audits; (e) my personal observations of the actions of the dentists involved; and (f) my review of charts identified in paragraphs 32-39 in my Fourth Amended Petition showing excessive and/or unnecessary treatment, that the Unlawful Acts in violation of TMFPA Section 36.002(1) were committed knowingly." CR611 ¶20.

4903-6921-7390

Unlawful Acts, (b) civil penalties be assessed in the amount of two times the amount of the claims per Chapter 36.052(a)(4); and (c) civil penalties of $5,500-$11,000 per Unlawful Act be assessed as set forth in Chapter 36.052(a)(3) above for the time period 2011 until July 31, 2016. For the time period August 1, 2016 until time of trial the civil penalties are $10,781.40 to $21,562.80 per claim.

As for certain civil monetary remedies and penalties pertaining to patients of Dr. Benito Benitez, the expert reports of Sally Reaves submitted as exhibits to Plaintiff's Designation of Experts on November 6, 2024, as well as Plaintiff's Supplemental Designation of Experts on January 31, 2025 set forth remedies and penalties ranging from approximately $17-24 Million pertaining to patients of this dentist alone. All such expert reports are incorporated by reference as being responsive to this Interrogatory.

Supp.CR41.

That interrogatory response states that LaFountain has not yet calculated the amount of money he seeks to recover at trial (which was just 2 months away), and cannot identify (1) the number of "Unlawful Acts" he contends Defendants committed, or (2) the amount of civil penalties he will seek for each Unlawful Act. Bear Creek sought summary judgment because LaFountain has no evidence that a health care program provided a payment or benefit as a result of such unlawful act, which is the standard under the TMFPA. In response, LaFountain failed to provide evidence regarding any claimed payment or benefit to Bear Creek.

TMFPA claims require evidence in the form of patient charts and billing records. LaFountain provided neither, and that is fatal to his claims. Without billing records, LaFountain cannot prove what Bear Creek billed Texas Medicaid for and

39

how they coded the treatments. Without patient charts, he cannot establish what did or did not occur in the clinical setting. Without the charts, he also cannot prove whether the dental work was necessary or properly performed. Without the charts and billing records, he cannot prove that fraudulent billing occurred. Without the bills and charts, the trier of fact cannot compare what Bear Creek billed for versus what did or did not occur clinically.

The lack of actual billing records and patient charts is not the only fatal defect. Only an expert dentist can analyze the charts and offer testimony about whether or not treatments were necessary and performed to the standard of care. LaFountain is not a dentist, and his designated expert Dr. Olson was struck (because, in part, he never undertook that actual analysis of patient charts). Nor was there an expert to analyze whether the services Defendants rendered were properly coded and billed. LaFountain's expert on that topic—Reaves—was struck also because, in large part, she did not do that analysis either.

Which led to the inevitable conclusion that LaFountain's claims were properly dismissed on summary judgment. LaFountain pleads many salacious allegations, and his Affidavit repeats those allegations as if they were facts within his personal knowledge. But at the time of the summary judgment, this lawsuit had been pending for 13 years, and it was set for trial in two weeks. In all of that time LaFountain has wholly failed to adduce evidence—actual, direct evidence—to support his

40

allegations. The trial court properly granted the no-evidence motion for summary judgment because it was time to end things.

PRAYER

WHEREFORE, Bear Creek respectfully prays that the Court affirm the final judgment in all things.

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX  78701-3234
Phone: (512) 495-6300
Fax: (512) 495-6399

By: _____
    Jane Webre
    State Bar No. 21050060
    jwebre@scottdoug.com

CRAIG D. CHERRY
Bar No. 24012419
ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Rd., Second Floor
Waco, Texas 76710
Phone: (254) 732-2242
Fax: (866) 627-3509

4903-6921-7390

CHRISTOPHER S. AYRES,
Bar No. 24036167
csayres@ayreslawoffice.com
R. JACK AYRES, JR.
Bar No. 01473000
rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Phone: (972) 991-2222
Fax: (972) 386-0091


Chris Davis
cdavis@grayreed.com
GRAY REED
1601 Elm Street, Suite 4600
Dallas, TX 75201
Phone: (214) 954-4135

**Counsel for Appellees**


CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared using Microsoft Word 2019. According to its word-count function, the sections covered by Tex. R. App. P. 9.4(i)(1) contain 9,643 words in a 14-point font size and footnotes in a 12-point font size.

_____
Jane Webre

CERTIFICATE OF SERVICE

I certify that I served this brief through the electronic filing system on counsel of record on October 20, 2025.

_____
Jane Webre

# App.1

CAUSE NO. D-1-GV-12-000277

| | | |
|---|---|---|
| THE STATE OF TEXAS<br>Ex rel. JOSHUA LAFOUNTAIN | § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| BLT MANAGEMENT COMPANY, LLC n/k/a<br>BLT SUPPORT SERVICES, LLC; et al | § § § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE OR STRIKE THE TESTIMONY OF SALLY REAVES

On this day came to be considered Defendants' Motion to Exclude or Strike the Testimony of Sally Reaves (the "Motion"). The Court, having considered the Motion, Plaintiff's response, and the arguments of counsel, is of the opinion that Defendants' Motion should be granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Exclude or Strike the Testimony of Sally Reaves is **GRANTED**.

SIGNED on February 4, 2025.

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 05/06/2025 10:31:18

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

App.2

CAUSE NO. D-1-GV-12-000277

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| Ex rel. JOSHUA LAFOUNTAIN | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| | § | |
| BLT MANAGEMENT COMPANY, LLC n/k/a | § | |
| BLT SUPPORT SERVICES, LLC; et al | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE OR STRIKE THE TESTIMONY OF DR. GREGORY OLSON

On this day came to be considered Defendants' Motion to Exclude or Strike the Testimony of Dr. Gregory Olson (the "Motion"). The Court, having considered the Motion, Plaintiff's response, and the arguments of counsel, is of the opinion that Defendants' Motion should be granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Exclude or Strike the Testimony of Dr. Gregory Olson is **GRANTED**.

SIGNED on February 4, 2025.

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 05/06/2025 10:31:18

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

App.3

CAUSE NO. D-1-GV-12-000277

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| Ex rel. JOSHUA LAFOUNTAIN | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| | § | |
| BLT MANAGEMENT COMPANY, LLC n/k/a | § | |
| BLT SUPPORT SERVICES, LLC; et al | § | |
| | § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ALL BEAR CREEK DEFENDANTS

On this day came to be considered Plaintiff's Motion to Compel Production of Documents by All Bear Creek Defendants (the "Motion"). The Court, having considered the Motion, Defendants' response, and the arguments of counsel, is of the opinion that Plaintiff's Motion should be denied.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Production of Documents by All Bear Creek Defendants is **DENIED.**

SIGNED on February 4, 2025.

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County,
Texas, do hereby certify that this is a true and
correct copy as same appears of record in my
office. Witness my hand and seal of office
On 05/06/2025 10:31:18

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

App.4

CAUSE NO. D-1-GV-12-000277

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| Ex rel. JOSHUA LAFOUNTAIN | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| | § | |
| BLT MANAGEMENT COMPANY, LLC n/k/a | § | |
| BLT SUPPORT SERVICES, LLC; et al | § | |
| | § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER

On this day came to be considered Plaintiff's Motion to Amend Scheduling Order (the "Motion"). The Court, having considered the Motion, Defendants' response, and the arguments of counsel, is of the opinion that Plaintiff's Motion should be denied.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend Scheduling Order is DENIED.

SIGNED on February 4, 2025.

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 05/06/2025 10:31:19 _____

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

Page 529

App.5

CAUSE NO. D-1-GV-12-000277

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| Ex rel. JOSHUA LAFOUNTAIN | § | |
| | § | |
| *Relator*, | § | |
| | § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| | § | |
| BLT MANAGEMENT COMPANY, LLC n/k/a | § | |
| BLT SUPPORT SERVICES, LLC; et al | § | |
| | § | |
| *Defendants*. | § | TRAVIS COUNTY, TEXAS |

## SUMMARY JUDGMENT ORDER

Before the Court is Defendants' Second Amended No-Evidence Motion for Summary Judgment (the "Motion"). Also before the Court are Defendants' objections to Relator's summary judgment evidence (the "Objections"). The Court considered the Motion, Relator's response, Defendants' reply, the Objections, and the arguments of counsel. The Court rules as follows:

IT IS ORDERED that the Motion is GRANTED, and Relator's claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Objections to Relator's summary judgment evidence are SUSTAINED.

This is a final judgment. It disposes of all parties and all claims and is appealable.

SIGNED this 31st day of March 2025.

_____
PRESIDING JUDGE

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 05/06/2025 10:31:20

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

4929-2361-5791

App.6

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| Ex rel. JOSHUA LAFOUNTAIN | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 126TH JUDICIAL DISTRICT |
| | § | |
| BLT MANAGEMENT COMPANY, LLC | § | |
| n/k/a BLT SUPPORT SERVICES, LLC; et al | § | |
| | § | TRAVIS COUNTY, TEXAS |
| *Defendants.* | | |

## <u>AFFIDAVIT OF SYLVIA ACOSTA</u>

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Sylvia Acosta, who swore on her oath the following:

1.    "My name is Sylvia Acosta. I am of sound mind, over the age of 21 years, have personal knowledge of each of the matters stated herein, and am fully competent to testify to the matters stated herein. The matters stated herein are true, correct, and accurate to the best of my personal knowledge.

2.    I am employed by Bear Creek Dentistry. I have worked at Bear Creek since August of 2003. Recently, my role and responsibilities have involved compliance, audits, credentialing and other delegated tasks.

3.    I am familiar with how Bear Creek creates, stores, and manages its internal patient records, patient charts, billing and other records (the "Records").

4.    Prior to 2006, Bear Creek created, stored and maintained the Records in a paper form. During the time frame between 2006-2008, Bear Creek began transitioning the creating,

AFFIDAVIT OF SYLVIA ACOSTA

Page 1

storing and maintaining of the Records in a predominately electronic format. Following 2008, the Records were all largely electronic.

5. I am familiar with the requests sent and received by Bear Creek to produce documents. I personally verified and assisted in locating responsive documents in paper and electronic form, as they were stored and maintained.

6. I have reviewed the following photos of the warehouse where the paper Records are stored and maintained:

 

 

These Records comprise all accounting and reports documenting dentists' services, charges, review of said charges, and all billing records. These are the exact billing and other records that would show all billing efforts, submissions and data and are directly responsive to Plaintiff's requests for production. These boxes were all provided to Plaintiff at their May inspection. In fact, the bottom photo is a still-shot from video showing Plaintiff's counsel's review of such Records at the May inspection.

AFFIDAVIT OF SYLVIA ACOSTA

7.     The warehouse also contains additional Records of patient charts in hard-copy form that were stored in several filing cabinets.   Those items reflected the care and treatment justifying the work, services and billing for the patients. The charts also included hard copies of x-rays or other radiographs studied.   There were multiple filing cabinets provided at the May inspection that contained relevant charts, organized by patient name:

 

8.     The photos above reflect an accurate depiction of the types, volume and presentation of the paper Records at the time of the May inspection.

9.     As to electronic documents, Plaintiff sent requests for certain information.   Bear Creek then produced a thumb drive that contained the data.   I personally verified all the responsible data to the requests was transferred to the thumb drive.

10.     To access the data, any user would need to utilize two software programs – Dentrix and Dexis.   Dentrix is predominately a record and/or management software.   For example, when a patient is seen and charted, that data is housed in Dentrix.   Dexis, on the other hand, is an imaging software that displays x-rays or other images.   Both Dentrix and Dexis are the "gold standard" in dental practice management.   Whenever Bear Creek communicates or exchanges electronic records, including with the government, insurance providers, attorneys, etc., that information is transmitted and reviewed with these programs.

11.     After Bear Creek was told that the first thumb drive was difficult to manage for

AFFIDAVIT OF SYLVIA ACOSTA

Plaintiff's counsel, I loaded a second thumb drive with the same information, and also loaded the Dentrix and Dexis viewers' "load files" or applications on the thumb drive. Load files/applications allow the software to be fully loaded and installed onto a separate computer. We likewise gave instructions on how to do so. Again, I verified all responsive data was included and accessible.

12. Likewise, after continued issues, Bear Creek decided to simply purchase a laptop. I worked with our IT professionals to do so, loading not only the data but actually installing Dentrix and Dexis on to the laptop. Again, I verified all responsive data was included and accessible, and verified the data was viable in the software programs.

13. Plaintiff's requests for JPEG images are not customary or reliable. Bear Creek does not create or keep images in this format, nor does Dentrix or Dexis. X-rays and imaging are only reliable if a viewer has contrast. JPEG's have no contrast controls, by definition. Without contrast, diagnosis is unreliable. That is why Dexis files are the reliable and generally recognized standard in the dental industry because they allow for adjustments in contrast..

14. Neither of the thumb drives nor the laptop were corrupted in any manner when we produced such materials. To the contrary, all three devices loaded and were accessible by me when utilized. I cannot speak to what actions Plaintiffs or Plaintiff's counsel took in altering the devices or data.

15. I am familiar with Plaintiff's assertions that not all files contained charts. I can confirm that seven patient records have no imaging whatsoever. Those charts are noted below. Additionally, two charts Plaintiff identified are not valid charts in the Dentrix system.

16. The following represents a list of the patient materials submitted on each thumb drive and laptop. The doctors and locations folders are shown in the initial box, and then the files in each folder follow:

AFFIDAVIT OF SYLVIA ACOSTA

| | | |
|---|---|---|
| 📁 pecan_jsl list_benitez | 4/23/2024 11:40 AM | File folder |
| 📁 pecan_jsl list_clements | 4/24/2024 10:56 AM | File folder |
| 📁 pecan_jsl list_clements & benitez | 4/24/2024 3:17 PM | File folder |
| 📁 spring valley_jsl list_henegar | 4/25/2024 2:19 PM | File folder |
| 📁 westcliff_jsl list | 4/25/2024 2:18 PM | File folder |
| 📁 westcliff_jsl list_evans | 4/25/2024 2:45 PM | File folder |
| 📁 westcliff_jsl list_molayem | 4/26/2024 10:57 AM | File folder |

## pecan_jsl list_benitez

| | | | |
|---|---|---|---|
| 📁 AL0529_Rubab Ali | | 4/23/2024 1:01 PM | File folder |
| 📁 LA0138_Josbana Larin | | 4/23/2024 1:01 PM | File folder |
| 📁 RE0327_Emily Reymundo | NO IMAGES | 4/26/2024 2:24 PM | File folder |
| 📁 RO1103_Ingrid Rogdriguez | | 4/24/2024 10:55 AM | File folder |
| 📁 SO0049_Jonathan Sosa Quintana | | 4/24/2024 10:55 AM | File folder |

## pecan_jsl list_clements

| | | | |
|---|---|---|---|
| 📁 AD0025_Miguel Angel Adame | | 4/74/2024 10:58 AM | File folder |
| 📁 GA0084_Jorge Garciaaguilar | NO IMAGES | 4/26/2024 2:28 PM | File folder |
| 📁 MA0375_Gilberto Martinezjr | | 4/26/2024 2:25 PM | File folder |
| 📁 OR0217_Patrick Orellana | | 4/76/2024 2:78 PM | File folder |
| 📁 SA0761_Briceyda Sanches | | 4/24/2024 11:04 AM | File folder |

## pecan_jsl list_clements & benitez

| | | |
|---|---|---|
| 📁 AL0564_Ivan Alamo | 4/24/2024 11:31 AM | File folder |
| 📁 ES0386_Miranda Esquivel | 4/24/2024 11:33 AM | File folder |
| 📁 GA0835_Christopher Garcia | 4/26/2024 2:29 PM | File folder |
| 📁 ME0088_Guadalupe Medelin | 4/26/2024 2:29 PM | File folder |
| 📁 PE0272_Jacqueline Perez | 4/24/2024 11:54 AM | File folder |
| 📁 QU0002_Hector Quezada | 4/74/2024 12:10 PM | File folder |
| 📁 QU0110_Erick Quintanilla | 4/24/2024 12:54 PM | File folder |
| 📁 RA0381_James Ramirez | 4/74/2024 1:05 PM | File folder |
| 📁 RO0508_Jeremna Robinson | 4/24/2024 1:08 PM | File folder |
| 📁 SA0880_Galindo Saucedojr | 4/74/2024 1:40 PM | File folder |
| 📁 TE0072_Vanessa Terrones | 4/24/2024 1:44 PM | File folder |



AFFIDAVIT OF SYLVIA ACOSTA

Page 5

**spring valley_jsl list_henegar**

| | | |
|---|---|---|
| BE0052_Rocio Beltran | 4/24/2024 1:43 PM | File folder |
| BE0055_Russell Bergeron | 4/24/2024 3:59 PM | File folder |
| CO0089_Jose Contreras | 4/24/2024 4:01 PM | File folder |
| CO0090_Jesus Contreras | 4/24/2024 4:01 PM | File folder |
| FI0009_Jazmin Fiscal | 4/24/2024 4:03 PM | File folder |
| FL0048_Relota Fluellen | 4/24/2024 4:13 PM | File folder |
| FL0063-6 Marcus Fletcher | 4/24/2024 4:13 PM | File folder |
| HE0100_Moises Hernandez | 4/24/2024 4:16 PM | File folder |
| HE0101_David Hernandez | 4/24/2024 4:27 PM | File folder |
| HO0007_Olyssia Holmes | 4/25/2024 11:37 AM | File folder |
| IN0005_Jose Ingles | 4/25/2024 12:25 PM | File folder |
| NI0007_Stephanie Nieves | 4/25/2024 12:31 PM | File folder |
| PA0070_Mauricio Pardo | 4/25/2024 12:33 PM | File folder |
| SO0012_Juan Somoza | 4/25/2024 12:41 PM | File folder |
| SW0002_Jalisa Sweet | 4/25/2024 12:39 PM | File folder |
| TE0012_Yohana Teffri | 4/25/2024 12:46 PM | File folder |
| TE0013_Luwana Teffri | 4/25/2024 12:46 PM | File folder |
| VE0031_Jorge Veraji | 4/25/2024 12:56 PM | File folder |
| VI0042_Eva Villegas | 4/25/2024 12:58 PM | File folder |

**westcliff_jsl list**

| | | | |
|---|---|---|---|
| AL0178_Alexis Alonso | | 4/25/2024 1:33 PM | File folder |
| AN0085_Jyrin Anderson | | 4/25/2024 1:35 PM | File folder |
| AV0017_Chadrick Avery | | 4/25/2024 1:14 PM | File folder |
| BA0151_Edgar Baldera | | 4/25/2024 1:16 PM | File folder |
| GO0114_Benjamin Gonzalezjr | NO IMAGES | 4/26/2024 2:31 PM | File folder |
| GO0115_Jonathan Gonzalez | | 4/26/2024 2:31 PM | File folder |
| HE0127_Monae Henry | | 4/25/2024 1:24 PM | File folder |
| LA0143_Meleyah Lacey | | 4/25/2024 1:29 PM | File folder |
| ME0227_Genie Medina | | 4/25/2024 1:39 PM | File folder |
| NA0039_Jeshuah Naut | | 4/25/2024 1:41 PM | File folder |
| NU0016_Rodrigo Nunez | NO IMAGES | 4/26/2024 2:31 PM | File folder |
| PO0036_Melina Ponce | | 4/25/2024 1:53 PM | File folder |
| PO0037_Raul Ponce | | 4/26/2024 2:31 PM | File folder |
| PO0038_Juan Ponce | | 4/25/2024 1:57 PM | File folder |
| RI0059_Dezaere Rivera | | 4/25/2024 2:00 PM | File folder |
| RI0067_Damaris Rico | | 4/25/2024 2:03 PM | File folder |
| RO0215_Victor Rodriguezjr | | 4/25/2024 2:05 PM | File folder |
| SI0059_Jacqueline Silva | | 4/25/2024 2:07 PM | File folder |
| TA0082_Sanya Taylor | | 4/25/2024 2:09 PM | File folder |
| TO0075_Ivan Torresjr | | 4/25/2024 2:14 PM | File folder |
| VI0085_Leslie Villegas | | 4/26/2024 2:32 PM | File folder |
| WA0192_Megan Walker | | 4/25/2024 2:17 PM | File folder |

AFFIDAVIT OF SYLVIA ACOSTA

Page 6

## westcliff_jsl list_evans

| | | |
|---|---|---|
| BA0016_Marqueshea Barrett | 4/25/2024 2:24 PM | File folder |
| BO0056_Braxton Boyland | 4/25/2024 2:41 PM | File folder |
| FL0057_Alfred Flores | 4/26/2024 7:47 PM | File folder |
| FU0028_Sarah Fuentes | 4/25/2024 7:49 PM | File folder |
| FU0032_Brandon Fuentes | 4/25/2024 2:53 PM | File folder |
| I00016_Leonardo Iberra  NO IMAGES | 4/26/2024 2:33 PM | File folder |
| JA0116_Jermaine Jacksonmeyers | 4/25/2024 3:00 PM | File folder |
| LA0067_Laisetha Lawrence | 4/25/2024 3:02 PM | File folder |
| LA0068_Janie Lawrence | 4/25/2024 4:04 PM | File folder |
| ME0115_Eyrny Mixtega | 4/25/2024 3:14 PM | File folder |
| MI0003_Crystal Miller | 4/25/2024 3:16 PM | File folder |
| MI0074_Jerry Mixtega | 4/25/2024 3:21 PM | File folder |
| OF0001_Keith Offord | 4/25/2024 3:27 PM | File folder |
| OL0020_Mycheal Oliver | 4/25/2024 3:44 PM | File folder |
| OW0005_Briana Owens | 4/25/2024 3:36 PM | File folder |
| PE0123_Adrian Pereznegron | 4/25/2024 3:40 PM | File folder |
| PE0124_Armando Pereznegron | 4/25/2024 3:42 PM | File folder |
| RE0078_Aja Richardson | 4/25/2024 4:27 PM | File folder |
| RO0033_Dinah Romero | 4/26/2024 8:30 AM | File folder |
| RO0204_Dyamond Rogers | 4/26/2024 8:35 AM | File folder |
| TI0017_Valery Tinajero | 4/26/2024 8:37 AM | File folder |
| ZA0003_Savannah Zamore  NO IMAGES | 4/26/2024 2:37 PM | File folder |

## westcliff_jsl list_molayem

| | | |
|---|---|---|
| AR0094-5_Jahir Arellano Jove | 4/26/2024 2:41 PM | File folder |
| AR0095-5_Brayan Arellano | 4/26/2024 8:40 AM | File folder |
| CR0021-5_Alejandra Cruz | 4/26/2024 8:41 AM | File folder |
| CR0022-5_Enrique Cruz | 4/26/2024 9:22 AM | File folder |
| HA0377-5_Tamara Haywood | 4/26/2024 9:28 AM | File folder |
| LO0156-5_Jesus Lopes | 4/26/2024 9:32 AM | File folder |
| MO0827_NO CHART ID IN DENTRIX | 6/18/2021 1:35 PM | File folder |
| MO0928-5_Edwin Mondragon | 4/26/2024 10:10 AM | File folder |
| NI0143_NO CHART ID IN DENTRIX | 6/18/2021 1:34 PM | File folder |
| OC0027-5_Estrella Ocampo | 4/26/2024 10:11 AM | File folder |
| RO0317-5_Aquilan Robinson | 4/26/2024 10:14 AM | File folder |
| RO0605-5_Shatare Robinson | 4/26/2024 10:36 AM | File folder |
| RU0061_Melanie Ruiz  NO IMAGES | 4/26/2024 10:49 AM | File folder |
| TH0232_Kadeydra Thomas | 4/26/2024 10:55 AM | File folder |



AFFIDAVIT OF SYLVIA ACOSTA

Page 7

FURTHER AFFIANT SAYETH NOT."



Sylvia Acosta

SWORN TO AND SUBSCRIBED before me on this the 30th day of January, 20025.

Notary Public, State of Texas

ALMA DAVILA
Notary Public, State of Texas
Comm. Expires 01-18-2028
Notary ID 12006802



AFFIDAVIT OF SYLVIA ACOSTA

Page 8

App.7

CAUSE NO. D-1-GV-12000277

| | | |
|---|---|---|
| THE STATE OF TEXAS<br>Ex rel. JOSHUA LAFOUNTAIN | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| | § | 126TH JUDICIAL DISTRICT |
| v. | § § | |
| | § | |
| BLT MANAGEMENT COMPANY, LLC n/k/a<br>BLT SUPPORT SERVICES, LLC; et al | § § | |
| | § | TRAVIS COUNTY, TEXAS |
| *Defendants.* | § | |

## AGREED LEVEL 3 SCHEDULING ORDER

The following Agreed Level 3 Discovery Control Plan shall apply to this case, unless modified by the Court or, if permissible, by written agreement of the parties under Rule 11 of the Texas Rules of Civil Procedure. In compliance with local rules, effective May 1, 2023, and by their respective signatures, below, counsel of record certify: (1) that none of the deadlines, below, are shorter than days-before-trial deadlines provided in the Court's Standing Pretrial Scheduling Order, but, if such deadlines are altered at all, the same are *prior to* the deadlines in the Court's Standing Pretrial Scheduling Order; and (2) that none of the days-before-trial deadlines in the Court's Standing Pretrial Scheduling Order shall be shortened without leave of Court, even if the parties agree:

1. July 15, 2024     **DEADLINE TO JOIN ADDITIONAL PARTIES**

2. July 15, 2024     **DEADLINE FOR PLAINTIFF TO AMEND OR SUPPLEMENT PLEADINGS.**

3. August 15, 2024     **DEADLINE FOR DEFENDANT TO AMEND OR SUPPLEMENT PLEADINGS.**

.4. October 15, 2024     **PLAINTIFF'S DEADLINE TO DESIGNATE EXPERT WITNESSES.** Plaintiff (and those seeking affirmative relief) must designate testifying experts by describing and producing all the information set forth in TEX. R. CIV. P. 194.2(f).

5. November 15, 2024     **DEFENDANT(S) DEADLINE TO DESIGNATE EXPERT WITNESSES:** Defendant(s) must designate testifying experts by describing and producing all the information set forth in TEX. R. CIV. P. 194.2(f). The deposition(s) of said expert(s) will take place within a reasonable time period **after** the deposition(s) of Plaintiff's experts.



6.  February 28, 2025   **DEADLINE FOR FILING ALL MOTIONS FOR SUMMARY JUDGMENT OR OTHER DISPOSITIVE MOTIONS.**

7.  February 14, 2025   **DEADLINE BY WHICH DISCOVERY MUST BE COMPLETED.** All discovery, including expert discovery, shall be completed by this date.

8.  March 3, 2025   **DEADLINE TO OBJECT TO PLAINTIFF/DEFENDANT'S DESIGNATED EXPERTS** (including *Daubert/Robinson/Havner* motions).

9.  March 7, 2025   **MEDIATION DEADLINE.** Counsel and parties shall proceed in a good faith effort to try and resolve this case and shall agree upon a mediation date to take place no later than March 7, 2025. Fees for mediation are to be divided and borne equally by the parties unless agreed otherwise, and shall be paid by the parties directly to the Mediator, and shall be taxed as costs.

10. March 14, 2025   All challenges to expert witnesses shall be filed on or before this date.

11. March 14, 2025   **DEADLINE TO IDENTIFY TRIAL WITNESSES, INCLUDING EXPERT AND REBUTTAL WITNESSES REASONABLY EXPECTED TO BE CALLED TO TRIAL.**

12. March 14, 2025   **DEADLINE TO EXCHANGE TRIAL EXHIBITS.** Each party will forward to every other party of record a copy of all trial exhibits and/or list of documents to be used as trial exhibits (if previously provided).

13. April 2, 2025   **DEPOSITION TESTIMONY –** Counsel shall exchange page and line references for all deposition testimony to be offered in the case in chief.

14. April 4, 2025   **MOTIONS IN LIMINE** – Counsel shall exchange motions in limine, which shall not include the matters in the Travis County Standing Order in Limine.

15. April 8, 2025   **DEPOSITION TESTIMONY (Cross Designations) –** Counsel shall exchange cross-designations of page and line references of all deposition testimony to be used at trial. **Deposition Testimony (Objections) –** Counsel shall also provide a written statement of page and line references to their respective designations on which they seek a ruling on any evidentiary objections, including the basis for the



objections. Failure to timely object will be deemed a waiver of any objections.

**JURY CHARGE –** Each party shall file and serve on all other parties a proposed jury charge, including questions, definitions, and instructions, which shall include citations to the Texas Pattern Jury Charge and other authority that supports the submission.

16. April 10, 2025      **DEPOSITION TESTIMONY (Objections to Cross Designations)** Counsel shall provide a written statement of page and line references to cross- designations on which they seek a ruling on any evidentiary objections, including the basis for the objections. Failure to timely object will be deemed a waiver of the objection.

17. April 11, 2025      **MEET & CONFER –** Counsel shall confer in person or by telephone, in good faith, in an attempt to resolve (a) all objections to deposition designation and exhibits, (b) all disputed motion in limine filed by an opposing party, and (c) all disputed language in the opposing party's proposed jury charge. Any objections not resolved by conference will be heard at the pretrial conference, which is generally held on the first morning of trial.

18. April 14, 2025      **JURY TRIAL SET TO BEGIN.**

SIGNED this the __17th__ day of __January__, __2024__.

_____
PRESIDING JUDGE
AMY CLARK MEACHUM



**AGREED AS TO FORM AND ENTRY:**

/s/ Craig Cherry_____
Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Justin Allen
State Bar No. 24081977
jallen@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
400 Austin Ave., 9th Floor
Waco, Texas 76701
Telephone:  (254) 732-2242
Facsimile:  (866) 627-3509

AND

_/s/Chris Davis
Chris Davis
State Bar No. 24050483
cdavis@grayreed.com
Angela Laughlin Brown
State Bar No. 24034533
abrown@grayreed.com
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201

Attorneys for Buckner Marketplace Dental PA,
Pecan Plaza Dental PA, Pioneer Dental PA,
Plaza De Oro Dental PA, Spring Valley
Crossing Dental PA, Robert E. Tafel, DDS, PA
Robert E. Tafel DDS, PC and Westcliff Dental
PA

*/s/ Christopher S. Ayres*
CHRISTOPHER S. AYRES, SBN 24036167
csayres@ayreslawoffice.com
R. JACK AYRES, JR., SBN 01473000
rjayres@ayreslawoffice.com
**AYRES LAW OFFICE, P.C.**
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
972-991-2222 – Phone
972-386-0091 – Fax

Attorneys for Defendants BLT Dental
Management Company, LLC, BLT
Management LLC n/k/a BLT Support
Services, LLC and Robert E. Tafel

/s/ J. Rusty Tucker
James "Rusty" Tucker
State Bar No. 20272020
rusty@rustytuckerlaw.com
Law Offices of James R. Tucker, P.C.
5522 Ellsworth Avenue
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874 (fax)

Attorney for Relator Joshua LaFountain



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Melissa Patterson on behalf of Jane Webre
Bar No. 21050060
mpatterson@scottdoug.com
Envelope ID: 107048101
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief Requesting Oral Argument
Status as of 10/20/2025 2:05 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michaelle Peters | | mpeters@scottdoug.com | 10/20/2025 1:59:23 PM | SENT |
| Luis Garcia | | lgarcia@scottdoug.com | 10/20/2025 1:59:23 PM | SENT |
| Christopher Davis | 24050483 | cdavis@grayreed.com | 10/20/2025 1:59:23 PM | SENT |
| Rowe Ayres | 1473000 | rjayres@ayreslawoffice.com | 10/20/2025 1:59:23 PM | SENT |
| Angela Brown | 24034533 | abrown@grayreed.com | 10/20/2025 1:59:23 PM | SENT |
| Jane Webre | | jwebre@scottdoug.com | 10/20/2025 1:59:23 PM | SENT |
| Nicollette Morton | | filings@ayreslawoffice.com | 10/20/2025 1:59:23 PM | SENT |
| Christopher Ayres | | csayres@ayreslawoffice.com | 10/20/2025 1:59:23 PM | SENT |

Associated Case Party: Joshua  LaFountain

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James Tucker | 20272020 | rusty@rustytuckerlaw.com | 10/20/2025 1:59:23 PM | SENT |

Associated Case Party: Buckner Marketplacce Dental, P.A. et. al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Craig Cherry | | ccherry@cjsjlaw.com | 10/20/2025 1:59:23 PM | SENT |